# Electric Lighting Company of Mobile v. Rust.

*Bill in Equity to enforce a Trust and to establish Title in Property bought at Mortgage Sale.*

1. *Foreign corporations; statute in reference thereto when contract made in another State.*—Where a foreign corporation, having its domicil and place of business in New York, lends money to another corporation in this State, and takes a mortgage on the property of the

[Electric Lighting Co. of Mobile v. Rust.]

borrowing corporation to secure the loan, and the mortgage is executed in New York and the bonds issued are also executed and made payable in New York, such transaction is governed by the laws of New York, and the mortgage is a New York and not an Alabama contract; and, therefore, such mortgage is not void because at the time of its execution the foreign corporation had not complied with the constitutional and statutory provisions of this State regulating the doing of business in Alabama by a foreign corporation.

2. *Same; executed contract.*—After a contract by a citizen of this State with a foreign corporation has been fully executed, there can be no relief granted as against such contract, because at the time of its execution the foreign corporation had not complied with the constitutional and statutory requirements prescribing the conditions on which it might transact business in this State.

3. *Sale of mortgaged property under execution; possession of purchaser not adverse to mortgagee; maintenance.*—When personal property included in a mortgage is sold by a sheriff under an execution issued on a judgment against the mortgagor, the possession of such property by the purchaser at said sale is not adverse as against the mortgagee, so far as to invalidate a subsequent sale of the same property under the power contained in the mortgage; the rule against maintenance not applying when the sale is a judicial sale, or is made by a public officer under legal process.

4. *Railroad company; right to mortgage its property to secure loan for conducting its business.*—In the absence of statutory limitation, a railroad company has the implied power to borrow money for the purpose of properly conducting its business, and to mortgage its property to secure the payment of the loan.

5. *Mortgage; can be made on property to be subsequently acquired.*—A valid mortgage can be made on property not in existence at the date of the mortgage, but to be subsequently acquired, so as to cover and include such property as soon as it comes into existence, and make it in equity an effective security for the mortgage debt.

6. *Sale of mortgaged property under execution; rights of purchaser.* A purchaser at a sale under execution acquires no other or greater interest in the property sold than was possessed by the execution debtor at the time of the sale; and if the property sold under an execution was at the time included in a mortgage which had been previously executed and duly recorded, and the purchaser knew of the existence of such mortgage, he is not a *bona fide* purchaser for value without notice.

7. *Mortgage of property not in existence; rights of mortgagor and mortgagee; equity will protect equitable title.*—Where a mortgage is given on property not in existence but to be afterwards acquired, so soon as such property comes into existence and is acquired by the mortgagor, he holds the legal title thereto as trustee for the mortgagee; and a court of equity will protect and enforce the mortgagee's equitable title to such property against all persons other than *bona fide* purchasers for value without notice.

APPEAL from the Chancery Court of Mobile.

Tried before the Hon. WILLIAM H. TAYLOE.

The bill in this case was filed by appellee, Lewis H. Rust, against the Electric Lighting Company of Mobile. The material allegations of the bill are as follows : The Mobile and Spring Hill Railway Company, on the 1st day of April, 1893, executed and delivered to the Mercertile Trust & Deposit Company of New York, and caused to be recorded in the probate court of Mobile county, a certain deed of trust, whereby the said railway company conveyed to the said trust company the railway of said company, situated in the city of Mobile and more particularly described in the bill; also all the iron rail, fastenings, railway structures, station houses, depots and platforms, rolling stock, horses, mules, cars, engines, wagons, stationary engines, boilers, electrical plant, appliances or equipment; also all office and stable furniture, and all equipment of any and every kind pertaining to the construction, maintenance and operation of said railroad, or any portion thereof, which were then owned or might thereafter be acquired by said company, for use upon its said described railway, or any portion thereof, or in connection therewith. A copy of said deed of trust is attached to the bill, as an exhibit.

After said mortgage or deed of trust had been executed and delivered and recorded as aforesaid, and the bonds secured thereby issued and disposed of, the defendant, the Electric Lighting Company of Mobile, entered into two agreements with the railway company, under which the defendant, said lighting company, was to furnish said railway company with electric power with which to operate its railroad cars, and said railroad company was to place certain generators and other property in the building of the electric company to be used by the electric company in furnishing such power. Said railway company, prior to November, 1893, for the purpose of carrying out said agreement, obtained and placed in the building of the defendant, to be operated under said agreement, two five hundred volt generators specifically described; also two power switch boards, numbers 218 and 184, together with appliances and wires attached thereto, and the defendant received and used said property as the property of the said railway company in the

performance of said contract with said railway company, until the 8th day of October, 1894, and thereafter retained the same, claiming the right to the possession thereof under said contract until the 23d day of May, 1895. And complainant avers that as soon as said property was so acquired by the railway company it became subject to and covered by said mortgage or deed of trust, and that thereafter the trustee in said mortgage became vested with the equitable title to said property and the said railway company held the legal title to said property in trust for the said trustee in said deed of trust or mortgage and for the benefit of the holders of the bonds secured by said deed of trust or mortgage.

The said railway company made default in the payment of the interest upon the bonds secured by said mortgage or deed of trust on October 1st, 1893, April 1st, 1894, and April 5th, 1895, and after two of such defaults had been made, but before any action was taken to foreclose the same, the defendant, the Electric Lighting Company, on June 15th, 1894, brought a suit against the said railway company in the city court of Mobile, obtained a judgment in said suit, caused an execution to be issued upon said judgment, and said execution to be levied on May 23, 1895, upon certain property described in the bill of complaint as the property of the Mobile & Spring Hill Railway Company. Said property was advertised for sale under said execution, and thereafter on the 7th day of June, 1895, was sold pursuant to said advertisement. At said sale, one Schafner, an employé of defendant Electric Lighting Company, bought said property in his own name, but for said company, and on the same day conveyed the same to said company. A sufficient sum was paid in cash upon the purchase money to satisfy the costs of said cause, and the balance of said purchase money was receipted for by defendant Electric Lighting Company on account of its said judgment, and said company has ever since kept and used said property as its own, claiming absolute ownership of the same under said execution sale. At and prior to the time when said execution was levied on said property and said sale made thereunder, the defendant, the Electric Lighting Company, knew of the existence of said mortgage or deed of trust, and that the same was of record; and complainant, upon advice,

charges that defendant took said property under said sale subject in equity to said mortgage or deed of trust, and held the legal title thereto in trust and for the benefit of those claiming under said mortgage or deed of trust.

On the 10th day of June, 1895, the trustee in the said mortgage or deed of trust, filed its bill of complaint against the said Mobile & Spring Hill Railway Company in the United States Circuit Court for the Southern District of Alabama, sitting in equity, to foreclose said mortgage or deed of trust, and to sell the property covered thereby, and to apply the proceeds thereof to the payment of the bonds and coupons secured thereby. Process was duly issued against and served upon the said Mobile & Spring Hill Railway Company, and said cause regularly prosecuted to a final decree of foreclosure and sale, and the property covered by said mortgage was duly advertised and sold by Richard Jones, who had been appointed by said court as special master to make said sale. Complainant, Lewis Rust, became the purchaser at said sale of all of the property, electric appliances and equipment of every kind pertaining to the construction, maintenance and operation of said railroad covered by said mortgage or deed of trust, and said sale was on May 6th, 1896, duly confirmed by said court, and said Richard Jones, special master as aforesaid, executed to complainant a conveyance of all of the property covered by said mortgage or deed of trust, including all electric appliances and equipments and also all equipments of any and every kind pertaining to the construction, maintenance and operation of said railroad.

The defendant, the Electric Lighting Company, at the time of the sale of the property above described, under said foreclosure decree in the United States Circuit Court, still had possession of said property, claiming to own and hold the legal title to said property. The Electric Lighting Company was not made a party to said foreclosure proceedings, and complainant avers that the legal title to said property did not, therefore, pass to complainant as against defendant by said sale under said foreclosure decree, but that complainant obtained under said sale the equitable title to said property with a right to its possession and that the said master could

not, and in fact did not, deliver to complainant the actual possession of said property under said sale, but the defendant retained the possession of said property and has refused to deliver the same to complainant, and was, at the time of complainant's purchase, denying and still denies, that it holds said property as trustee for complainant, and does not recognize that complainant has any interest therein of any kind or description.

The Electric Lighting Company of Mobile is the only party defendant to the present bill. The prayer of the bill is that the defendant might be decreed to hold the property described in the bill as trustee for the complainant, and that it be required forthwith to surrender possession of said property to complainant, the trust being, upon said delivery, terminated and ended; that the legal title to said property be vested in complainant, and that the Electric Lighting Company of Mobile be made to account for its said trust, and may be compelled to pay the complainant reasonable value for the use of the property during the time of its detention. There was also a prayer for general relief.

The defendant made a motion to dismiss the bill for the want of equity, and also demurred to the bill. There were 14 grounds of demurrer. These grounds of demurrer were as follows: 1. The first, second and eleventh grounds of demurrer insist that the deed of trust, under the foreclosure sale at which the complainant purchased, was void because the trust company had not complied with the statute requiring a foreign corporation to file with the Secretary of State a written designation of a known place of business and an authorized agent.

2. The third and fourteenth grounds of demurrer are upon the ground, that the generators were in the adverse possession of the defendant at the time the bill to foreclose the mortgage was filed, and at the time the complainant purchased them, and that his purchase was, therefore, void.

3. The seventh and tenth grounds of demurrer are based upon the contention that the bill is defective, in that it does not show that the railroad company had any power under its charter to mortgage property to be acquired subsequent to the execution of the mortgage, and that this mortgage was, therefore, *ultra vires*.

4. The fifth ground of demurrer insists that no mortgage can be made upon property afterwards to be acquired, and that such a mortgage confers no right, legal or equitable.

5. The eighth, ninth and twelfth grounds of demurrer are only to parts of the bill, and the ruling thereon does not affect the case.

6. The fourth and sixth grounds of demurrer are general demurrers.

7. The thirteenth ground of demurrer is the equivalent of a motion to dismiss the bill for the want of equity.

On the submission of the cause, upon the motion to dismiss and the demurrer, the chancellor rendered a decree overruling both the motion to dismiss the bill for the want of equity and the demurrer.

From this decree the defendant appeals, and assigns the rendition thereof as error.

FREDERICK G. BROMBERG, for appellant:—The bill shows that if any sale at all was made of the generators by the master it was when they were in the notoriously open, adverse possession of this appellant, and such sale is void.—1 Brick. Dig. 52, § 44; *Price v. Tally*, 18 Ala. 21; *Huddleston v. Huey*, 73 Ala. 215; *Probst v. Bush*, 115 Ala. 495; *Foy v. Cochran*, 88 Ala. 353; *Ala. State Bank v. Barnes*, 82 Ala. 607; *Goodwyn v. Lloyd*, 8 Port. 260; *Brown v. Lipscombe*, 9 Port. 563. It is only in the case of judicial sales of lands that property in the adverse possession of third parties may be sold under judicial processes.—Freeman on Void Judicial Sales, 36. In every other case the officer or court must have actual possession of property before making valid sale of it. Hence before a mortgage of chattels can be foreclosed by sale, the mortgagee must acquire actual possession of the chattels by action in detinue if necessary.—Jones on Chattel Mortgages, (2d ed.), § 783.

The act of the Mercantile Trust Company in loaning money to the Springhill Railway Company, secured by bonds and mortgage, although the bonds are payable in New York, was doing business in this State within the meaning of the State's constitution.—Article XIV, § 4, and the act approved February 28, 1887; *The State v. Bristol Savings Bank*, 108 Ala. 3; *Farrior v. New Eng-*

*land Mortgage Security Co.*, 88 Ala. 275. It was not within the power of the Mercantile Trust Company to do such act in this State.—*State v. Bank, supra; Farrior v. N. E. Mortg. Sec. Co., supra; Sullivan v. Sullivan Timber Co.*, 103 Ala. 376.

The appellee claims as purchaser at a foreclosure sale, by a chancery court, under a deed of mortgage given to a foreign corporation, which had not complied with the requirements of the constitution of the State of Alabama relating to foreign corporations doing business in this State. The deed of mortgage was void and the sale thereunder was void, and conferred no title in appellee. Const. Ala. 1875, Art. XIV, § 4; Acts of 1886–87, p. 102; *State v. Bristol Bank*, 18 So. Rep. 533, 108 Ala. 3; *Farrior v. N. E. Mortg. Sec. Co.*, 88 Ala. 275; *Christian v. Am. Freehold L. M. Co.*, 89 Ala. 198; *Nelms v. Edinburg A. L. M. Co.*, 92 Ala. 157; *Sullivan v. Sullivan Timber Co.*, 103 Ala. 376; *Ross v. N. E. Mortg. Co.*, 101 Ala. 362; *Dundee Mortg. & Trust Investment Co. v. Nixon*, 95 Ala. 318; *Dudley v. Collier*, 87 Ala. 433. The foregoing authorities show, also, that the facts which avoid the penalties of the provisions of the constitution and statutes must be affirmatively shown by the appellee. *Farrior v. N. E. Mortg. Sec. Co.*, 88 Ala. 275; *Nelms v. Edinburg Am. L. M. Co.*, 92 Ala. 157; *Am. Un. Tel. Co. v. West. Un. Tel. Co.*, 67 Ala. 26.

The appellant can avail itself of the foregoing defense, because it is not a party to the mortgage, and was not a party to the foreclosure proceedings, and as to it the mortgage is still executory and not executed. The chattels sued for were held adversely to the appellee's vendor, openly and hostilely, as the bill shows and at the time of sale. The sale passed no title to the appellee.—1 Brick. Dig. 52, § 44; *Price v. Tally*, 18 Ala. 21; *Huddleston v. Huey*, 73 Ala. 216; *Hinton v. Nelms*, 13 Ala. 230; *Probst v. Bush*, 115 Ala. 495; *Foy v. Cochran*, 88 Ala. 353; *Ala. State Bank v. Barnes*, 82 Ala. 607; *Goodwin v. Lloyd*, 8 Port. 260; *Brown v. Lipscombe*, 9 Port. 563; *Horton v. Smith*, 8 Ala. 77.

The bill shows that the chattles were never in the possession of the railway company; that the mortgagee through whom appellee claims was a foreign corporation which had not complied with the requirements of the law

relating to the doing of business in the State by foreign corporations; that the railway company had no power under its charter to mortgage after-acquired property, and shows that the chattels were subject to appellant's execution and sale thereunder, and, therefore, the execution sale passed the railway's title to the chattels to the appellant. At common law a mortgage can operate only upon property actually in existence.—Jones Chat. Mort., (2d ed.), §§ 138-139. The bill does not show that, by its charter, the railway company could make a mortgage which should include after-acquired property.—Code of 1886, § 1580, subd. 14; Jones Corp. Bonds and Mortgages, § 97; Pamph. Acts Alabama, 1892-93, pp. 570-572. Hence, if the generators did actually become the property of the railway company, they were not covered by the mortgage, and could not be levied upon under appellee's execution out of the city court.—*Scott v. Farmers L. & T. Co.*, 69 Fed. Rep. 17; *Porter v. Steel Co.*, 122 U. S. 283.

GREGORY L. & H. T. SMITH, *contra*.—The mortgage under which complainant claims is shown by the bill to have been executed in New York, and the taking thereof was not, therefore, in any sense, the doing of business in Alabama.—*Collier & Pinckard v. Davis Bros.*, 94 Ala. 456. Nor does the foreclosure of a mortgage, through the courts, constitute the doing of business.

In the next place, this mortgage has already been foreclosed and the contract thereby fully executed. It is now too late to inquire as to whether it was a binding contract before it was executed.—*Craddock v. Mortgage Co.*, 88 Ala. 282; *Long v. Ga. Pac. R. R. Co.*, 91 Ala. 519; *Russell v. Jones*, 101 Ala. 261.

The possession of a purchaser at a sheriff's sale under execution against the mortgagor is not adverse to the mortgagee so far as to invalidate a subsequent sale under the mortgage.—*Williams v. Hatch*, 38 Ala. 338; *Jackson v. Jackson*, 5 Cow. (N. Y.) 173.

Indeed, the doctrine appealed to by this demurrer has no application whatever to purchases made under judicial sales such as that under which the complaimant claims.—*Humes v. Bernstein*, 72 Ala. 556; 5 Amer. & Eng. Encyc. of Law 842, n. 3.

Every corporation has an implied power to borrow

money and, within the constitutional limitations, to mortgage its property to secure the loan.—Short's Law of Railway Bonds and Mortgages, 140 ; *Railroad Co. v. Lancaster,* 62 Ala. 564 ; *Kelly v. Trustees of A . & C . R . R. Co.,* 58 Ala. 489.

The fifth demurrer insists that no mortgage can be made upon property afterwards to be acquired, and that such a mortgage confers no right, legal or equitable. That such a mortgage is, however, perfectly valid and enforceable by a bill in equity to foreclose this mortgage, is the well settled law of this State.—*Hurst v. Bell,* 72 Ala. 340 ; *Columbus Iron Works v. Renfro Bros.,* 71 Ala. 579 ; *Burns v. Campbell,* 71 Ala. 288 ; *Ballard v. Mayfield,* 107 Ala. 399.

The defendant company claims under an execution sale made after the mortgage had been duly recorded. The doctrine invoked, which prevents the passage of title while property is in the hands of a third person, has no application whatever to judicial sales.—*Humes v. Bernstein,* 72 Ala. 556 ; *Davis v. Shepard,* 40 Ala. 587 ; *Coleman v. Hair,* 22 Ala. 598. Indeed, that this rule has no application to a case precisely like the one at bar, has already been expressly settled.—*Williams v. Hatch,* 38 Ala. 338, *et seq.*

The doctrine of *caveat emptor* applies to all purchases at execution sales, so that the defendant, in purchasing at the execution sale, took subject to the equitable title of the mortgagee, under whose mortgage the complainant claims.—*Lindsay v. Cooper,* 94 Ala. 178-9 ; *Bland v. Bowie,* 53 Ala. 162 ; *Lovelace v. Webb,* 62 Ala. 271 ; *Fore v. McKenzie,* 58 Ala. 115.

The defendant held the legal title in trust for the purchaser at the forclosure sale, which foreclosure was had after the legal title had passed out of the mortgagor, by the execution sale ; and a bill in chancery will lie against the purchaser at the execution sale to enforce the trust.—*Patapsco, etc. v. Ballard,* 107 Ala. 717 ; *Milner v. Rucker,* 112 Ala. 360 ; *Hurst v. Bell,* 72 Ala. 340 ; *Columbus Iron Works v. Renfro Bros.,* 71 Ala. 579 ; *Burns v. Campbell,* 71 Ala. 288.

HARALSON, J.—1. The 1st, 2d and 3d grounds of demurrer question the equity of the bill, on the ground, that at the time the mortgage,—the foundation of the

44

suit,—was executed; the mortgagee, the Mercantile Trust Company, had not complied with the constitution and statutes of this State, requiring a foreign corporation to file with the Secretary of State an instrument in writing, properly executed, designating at least one known place of business in the State. The bill shows plainly enough, that the mortgage was a New York and not an Alabama contract. It is the simple case of a foreign corporation, having its domicile and place of business in New York, lending to another corporation in the State of Alabama, a sum of money, and taking a mortgage on the property of the borrowing corporation to secure the loan, the mortgage being executed in New York and the bonds to secure the loan and their coupons, being also executed and payable in New York. Without more, by no just construction of our constitution and statutes, can this transaction of the loan of the money to the defendant company by the New York corporation, be held to be offensive to their provisions. *Collier & Pinckard v. Davis Bros.*, 94 Ala. 456; *Cooper Mfg. Co. v. Ferguson*, 113 U. S. 127; 8 Amer. & Eng. Encyc. of Law, 346.

Moreover, the mortgage had already been foreclosed and the contract fully executed, and if it were true that the transaction originated with a foreign corporation, which had not complied with our laws, it would be too late to set that fact up for relief.—*Russell v. Jones*, 101 Ala. 261; *Long v. Ga. Pac. R. Co.*, 91 Ala. 319; *Craddock v. A. F. L. M. Co.*, 88 Ala. 282.

2. It is well settled that the possession of a chattel by a purchaser at sheriff's sale, under execution against the mortgagor of the chattel, is not adverse to the mortgagee, so far as to invalidate a subsequent sale under the mortgage by the mortgagee.—*Williams v. Hatch*, 38 Ala. 338; *Herbert v. Hanrick*, 16 Ala. 581; *Brunson v. Morgan*, 86 Ala. 320. The doctrine invoked by the 3d and 14th grounds of the demurrer, that the defendant was in the adverse possession of the property in question, at the time the bill to foreclose the mortgage was filed, and at the time the complainant purchased at the foreclosure sale, is without force against the equity of the bill. The rule against maintenance does not apply when the sale is what is called a judicial sale, or is made by a public officer under legal process.—*Humes v. Bern-*

*stein,* 72 Ala. 547 ; 5 Am. & Eng. Encyc. of Law, (new ed.), 842, and authorities cited.

3. In the absence of limitation or restraint by statute, a railroad corporation has the limited power to borrow money as incidental to the proper conduct of its business, and to make bonds, notes and bills for its repayment, and to mortgage its property, real or personal, as security for such debt.—*S. & M. R. Co. v. Lancaster,* 62 Ala. 555 ; *Kelly v. Trustees A. & C. R. R. Co.,* 58 Ala. 489.

It is also an established doctrine in England and in this country, that a valid mortgage may be made of property not in existence at the date of the mortgage, so as to operate and attach upon it as soon as it comes into existence, and make it in equity an effective security for the debt provided for in the mortgage.—15 Am. & Eng. Encyc. of Law, 749, and numerous authorities there cited ; *Patapsco Guano Co. v. Ballard,* 107 Ala. 710.

From the foregoing it appears that the 5th, 7th and 10th grounds of demurrer were without merit.

4. The 13th ground questions generally the equity of the bill, and this and the motion to dismiss for the want of equity may be disposed of together.

The bill alleges the execution and foreclosure of the mortgage, and the purchase of the property by the complainant. The defendant company claims under an execution sale made after the mortgage had been duly recorded. The bill alleges, that "at, and prior to the time when said execution had been levied, the defendant, Electric Lighting Company, knew of the existence of the mortgage or deed of trust, and that the same was recorded." If this be true, as it must be held on demurrer, the defendant company could not be a *bona fide* purchaser for value without notice. Besides, in purchasing at execution sale, the defendant took the property subject to the equitable title of the mortgagee, under whose mortgage the complainant claims. "To such sales the rule of *caveat emptor* applies in its utmost vigor and strictness ;" and the purchaser acquires no other or greater interest in the property than was possessed by the execution debtor at the time of the sale.—*Lindsay v. Cooper,* 94 Ala. 170, 178 ; *Lovelace v. Webb,* 62 Ala. 271 ; *Fore v. McKenzie,* 58 Ala. 115 ; *Bland v. Bowie,* 53 Ala. 162.

The legal title of this property, acquired after the execution of the mortgage, remained in the mortgagor, the Mobile & Spring Hill Railroad Company, and when it came into existence under, and the mortgage attached to it, the mortgagor held the legal title as trustee for the mortgagee, the Mercantile Trust Company, under which the complainant derives the same equitable title. This equitable interest, a court of equity will enforce and protect against all persons other than *bona fide* purchasers without notice.—*Patapsco Guano Co. v. Ballard*, 107 Ala. 710 ; *Jackson v. Jackson*, 91 Ala. 293 ; *Hurst v. Bell,* 72 Ala. 336 ; *Mayer & Co. v. Taylor & Co.*, 69 Ala. 403 ; *McBrayer v. Cariker*, 64 Ala. 50 ; *Milner v. Rucker*, 112 Ala. 360.

The motion to dismiss the bill for want of equity and the demurrer questioning its equity were properly overruled.

It is unnecssary to notice the other grounds of demurrer, to which the bill, on its averments, was not open.

Affirmed.